UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA :

vs. : CR No. 06-135 T

JUAN FORBES :

MOTION TO DISMISS OR, IN THE ALTERNATIVE TO
STRIKE MANDATORY MINIMUM AND ALLOW DISCOVERY

The defendant, Juan Forbes, moves to dismiss the indictment, on grounds of selective prosecution, or in the alternative to strike the mandatory minimum sentence provided by 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 21 U. S. C. § 846. To assist the Court in fact-finding defense counsel requests that he be afforded leave to depose the person "with the most knowledge concerning the decision to prosecute the defendant in federal court". The defendant incorporates by reference the attached Memorandum Of Law In Support of Motion To Dismiss Or In The Alternative To Strike Mandatory Minimum.

JUAN FORBES,
By his attorney,

/s/ Edward C. Roy, Esquire
EDWARD C. ROY, ESQUIRE
Assistant Federal Public Defender
10 Weybosset Street, Suite 300
Providence, RI 02903
( 401 ) 528 - 4281
Edward_Roy@fd.org

CERTIFICATION

I hereby certify that I delivered a copy of the foregoing, by way of ECF filing to Sandra Beckner, AUSA, on the 30th day of January, 2007.

/s/ Edward C. Roy, Esquire

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| vs. | : | CR No. 06-135 T |
| JUAN FORBES | : | |

MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS OR, IN THE ALTERNATIVE TO
STRIKE MANDATORY MINIMUM

The defendant, Juan Forbes, and moved to dismiss the indictment, on grounds of selective prosecution, or in the alternative to strike the mandatory minimum sentence provided by 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 21 U. S. C. § 846. To assist the Court in fact-finding defense counsel requests that he be afforded leave to depose the person "with the most knowledge concerning the decision to prosecute the defendant in federal court".

1. Selective Prosecution

The defendant seeks to dismiss the indictment on the grounds that the case against him was prosecuted based on his status as an African American male. The defendant asserts that there were similarly situated white male defendants who were not prosecuted federally. In addition, on a national basis, the statistics for

sentencing show a decided bias against African American in crack prosecutions.

In the most recent statistical compilation prepared by the United States Sentencing Commission, for the pre-Booker portion of the fiscal year 83.2 % of the defendants charged with crack cocaine possession were African American. In a similar vein, post-Booker, the percentage of crack defendants who were of African American descent was 82.3%. (The statistical tables from the 2005 Sentencing Sourcebook are attached hereto as Exhibits A and B, respectively.)

In the District of Rhode Island, the Providence Police data summary for the most recent year for which statistics have been compiled, 2005, shows that of the 203 persons arrested for opium and/or cocaine sale/manufacturing 104 were white and 97were black. Clearly, there is a substantial population of white persons who could be prosecuted in the United States District Court for crack distribution offenses. ( Attached hereto as Exhibit C.)

Crack cocaine defendants in general are much less likely to receive any role in the offense adjustments. (Attached as Exhibits D and E, respectively, are charts demonstrating the role in the offense adjustments by drug type.) Crack cocaine offenders are the most likely to not receive acceptance of responsibility of all drug defendants. ( Attached as Exhibits F and G, respectively, are the pre and post-Booker statistics for acceptance of responsibility.)

Crack defendants are also most likely to receive a mandatory minimum

sentence, with no safety valve. ( The Sentencing Commission statistics on acceptance of responsibility pre and post-Booker for fiscal year 2005 are attached as Exhibits H and I, respectively.)

The median sentences for crack sentences are much higher than those for powder cocaine, both pre and post-Booker in fiscal year 2005. See attached Exhibits J and K, respectively.

Given the racial disparity-that African Americans account for the over-whelming majority of crack cocaine cases-the severe sentences for crack cocaine offenders disproportionately impact African Americans. The severity of crack cocaine sentences impacts African Americans who are sentenced to imprisonment but the damaging effects of crack cocaine sentencing are felt on communities where young men are removed from the community for long periods of time.

On November 14, 2006, the United States Sentencing Commission held a public hearing on cocaine sentencing policy. Among the witnesses who testified was U.S. District Judge Reggie Walton, who testified concerning the effect of long sentences on communities.

> So, you know, we have a lot of people in our prisons, and like I say, I don't have any apprehension about locking people up when it's appropriate, but as a society, you know, I think we have to make an assessment as to how many people can we continue to lock up and not only just drain our resources,

> which I think should be a major concern, but to remove from some of our communities the vast majority of men that we've removed and not have the devastating impact on communities that we see taking place now.

Testimony of the Honorable Reggie Walton, United States Sentencing Commission Hearing, November 14, 2006, at p. 120. ( Excerpt attached as Exhibit L).

The recent hearings held by Congress were the latest in a series of hearings designed to assess the overall effectiveness of the cocaine sentencing guidelines. In its 2002 report to Congress on Cocaine Sentencing Policy, the Sentencing Commission surveyed the race of crack and powder cocaine defendants. Without question, crack defendants are overwhelmingly black. In 1992, 91.4% of crack defendants were black. ( The demographic table is attached as Exhibit M) As of 2000, 84.7% of crack defendants were black. The Commission provided a summary of the testimony elicited in earlier hearings. Many of the witnesses spoke of the great racial disparity inherent in the current cocaine sentencing structure. Defense counsel would direct the Court's attention to the summarized testimony of A. J. Kramer, Jon Sands, Irwin Schwartz, Dr. Alfred Blumstein, Ronald Welch and Laura Murphy. ( The Commission's summary is attached as Exhibit N).

2. Applicable Law On Selective Prosecution

The Fifth Amendment of the United States Constitution contains a clause which guarantees equal protection. The equal protection clause limits the decision-making authority of prosecutors such that "the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." United States v. Armstrong, 517 U.S. 456, 464 (1996).

Discriminatory purpose may be shown by circumstantial evidence and by statistical compilations. See Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 (1977). ( "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.")

In a separate, but related, context, the challenge of exclusion of black jurors, the Supreme Court wrote of the erosion in public confidence resulting from the exclusion of black jurors.

> Undoubtedly, the overriding interest in eradicating discrimination from our civic institutions suffers whenever an individual is excluded from making a significant contribution to governance on account of his race. Yet the "harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in

the fairness of our system of justice".

Johnson v. California, 545 U.S. 162, 172 (2005) (citing Batson v. Kentucky, 476 U.S. 79, 87 ( 1986) )

The racial disparities in crack cocaine sentencing have also served to undermine confidence in the federal judicial system. See summary of testimony of Wade Henderson, Executive Director, Leadership Conference on Civil Rights, set forth in Exhibit N.

3.. Applicable Law On Defendant's Right To Discovery

In terms of assessing the "big picture" presented by the very serious, and, confounding, problems inherent in the issues framed by the defendant in this and the related cases, defense counsel can point to the discriminatory effect that results from the way that crack sentencing functions.

The United States Supreme Court has twice spoken to some of the issues posed by this case. In United States v. Armstrong, supra, , the Supreme Court held that a defendant seeking discovery of a selective prosecution claim must show some evidence of both discriminatory effect and discriminatory intent. 517 U.S., at 465. A defendant must make a "credible showing that similarly situated individuals of a different race were not prosecuted." Id., at 465, 470.

In a more recent decision, United States v. Bass, 536 U.S. 862 (2002), the Supreme Court again held that a defendant who was charged with a death-eligible

crime had made an insufficient showing to entitle him to discovery on a claim that he was targeted for the death penalty because of his race. The Supreme Court reasoned that the defendant's claim failed because he failed to show that similarly situated persons were treated differently. Id., at 863.

Statistics from the most recent data available, 2005, demonstrate that, in other years, nearly equal amounts of defendants were arrested by the Providence Police for cocaine and heroin trafficking. See Exhibit C.

A recent article in the Providence Journal, dated November 22, 2006, and attached as Exhibit O, shows that to a certain extent the defendants prosecuted federally were targeted by law enforcement. All of the defendants prosecuted in federal court were African Americans. Of the remaining 95 investigative targets, some must be white. The statistical evidence before this Court certainly may be interpreted to show that similarly situated defendants were treated differently. Only certain defendants were charged in federal court. Each defendant is black. Each defendant was charged in federal court because of the harsher penalties. This scenario cries out for further analysis an explanation by the Government.

For the reasons set forth herein, the defendant moves that this Honorable Court enter such relief as may be deemed appropriate under the circumstances.

JUAN FORBES,
By his attorney,

/s/ Edward C. Roy, Esquire
EDWARD C. ROY, ESQUIRE
Assistant Federal Public Defender
10 Weybosset Street, Suite 300
Providence, RI 02903
( 401 ) 528 - 4281
Edward_Roy@fd.org

CERTIFICATION

I hereby certify that I delivered a copy of the foregoing, by way of ECF filing to Sandra Beckner, AUSA, on the 31st day of January, 2007.

/s/ Edward C. Roy, Esquire