bn



U.S. SENTENCING COMMISSION

PUBLIC HEARING ON COCAINE SENTENCING POLICY

Tuesday, November 14, 2006

Georgetown University Law Center
Gerwirz Student Center
Twelfth Floor Conference Room
120 F Street, N.W.
Washington, D.C.

The public hearing on federal cocaine sentencing policy was convened at 9:20 a.m. before the members of the U.S. Sentencing Commission.

perception of fairness, not just of the criminal justice system, but as a consequence of the functioning of our government as a whole and whether it was serving, you know, all the people of America in a fair way.

One thing we haven't touched on yet this morning and, given your multiple roles both as a judge and as a policy maker in the narcotics and as an enforcer of narcotics law, one of the, you know, one of the problems that I think Congress is facing in addressing this issue has been the debate over whether or not the narrowing of the disparity should be done by increasing powder penalties. And I just wondered whether you had an opinion about whether or not there was a need to increase powder penalties by lowering the threshold for powder, since that is in part of where – part of what this debate is going to engage.

JUDGE REGGIE WALTON: Well, again, that's a policy decision that I don't know as a sitting judge I should give an opinion on, but let me just say this: I believe firmly that certainty of punishment

is a greater deterrent than giving lengthy sentences. That's not to say at some point, if somebody is a habitual criminal and they continue to put poison into the community and destroy people's lives and communities, that at some point harsh punishment is not appropriate, but I think at the beginning level, I think if individuals know that they're going to pay a consequence for their behavior, in my view, that has a greater deterrent impact than these significant sentences.

So, you know, we have a lot of people in our prisons, and like I say, I don't have any apprehension about locking people up when it's appropriate, but as a society, you know, I think we have to make an assessment as to how many people can we continue to lock up and not only just drain our resources, which I think should be a major concern, but to remove from some of our communities the vast majority of men that we've removed and not have the devastating impact on communities that we see taking place now. I just don't think -- I mean, as a father, I think fathers are important, and I think

that, as we continue to remove from communities the number of fathers that we do, we destroy communities.

So, increasing sentences for the sake of increasing sentences, I guess, you know, is problematic, and like I say, I think that if we aggressively enforce our laws and we make sure that, you know, people are going to get slapped when they get caught, I think that has a greater impact. I know a lot of inmates or people I've sentenced who've come into the federal system from the local system, and they have told me candidly, "Judge, if somebody had let me know before that you all were serious down here, I would have changed my conduct, but I thought, you know, I could do what I wanted to do and there weren't going to be any consequences because the two or three times I came down before, you didn't do anything to me." And I'm not saying that means necessarily put them in jail for a long period of time, but I think people expect, when they do wrong, to be punished, and if they're not punished, then it causes them to feel that crime

does pay, but I don't think that has to be harsh, throw-away-the-key punishment either.

CHAIRMAN RICARDO HINOJOSA: I, again, join all the Commissioners in expressing our appreciation for your coming. You said that you were very supportive of the guidelines, as obviously we are, and obviously the guidelines have been controversial with judges over the past 20 years, and now they're advisory in nature, and to some extent their application depends upon the discretion of judges. My question is, do you think the crack/powder disparity has any impact, from the judge's perspective, on the credibility of the guideline system as a whole?

JUDGE REGGIE WALTON: I think it does. I mean I think the statistics, which you know better than I, bear out the fact that judges, by and large, are still sentencing within the guidelines and that's been my experience, and my experience with the colleagues in the District of Columbia. And I think the area where you do see judges going off the reservation and giving non-guideline sentences is in

this arena, and I think it does have a negative impact on the credibility that the guidelines have when you have, in one particular area of the guidelines, a significantly greater number of judges going off the reservation and giving non-guideline sentences.

So, I think it would lend credibility to the guidelines if the disparity was addressed because I know — I mean there are judges who are doing some novel things in this area, and I've been asked about some of those, and while I struggle with these sentences, I still, for the reasons I indicated before, have great concern about me as an individual judge making the decision that I know better than everybody else and therefore I'm going impose these set of sentences in my cases as compared to what other judges are doing in other cases. I think it does hurt the credibility of the system to the same degree as what we have as far as disparity is concerned because, as I say, if you have someone with basically the same background having committed the same offense going into one

courtroom and getting 10 years and then go into another courtroom and get 2 years, I think it does create a perverse perspective about the system, and I think it does hurt the credibility of the process.

CHAIRMAN RICARDO HINOJOSA: Does anybody else have any other questions?

If not, Judge Walton, thank you so much. We realize you have a busy schedule, and we appreciate your willingness to come and speak on behalf of the Judicial Conference as well as give us your personal viewpoint, which has been extremely helpful. And I will say your written comments are also extremely helpful.

JUDGE REGGIE WALTON: Thank you for having me, and I hope the powers that be will have the will to do the right thing and rectify this problem.

CHAIRMAN RICARDO HINOJOSA: Thank you, sir.

PANEL FOUR: STATE AND LOCAL AGENCIES

CHAIRMAN RICARDO HINOJOSA: This panel represents some state and local perspectives. We've got Mr. Chuck Canterbury, who is the current national president of the Fraternal Order of Police,